PER CURIAM.
The plaintiff, Tracy Vickers, appeals from a summary judgment entered by the Mobile Circuit Court in favor of the defendants Dover Elevator Company and its employee Reuben A. English. We reverse and remand.
On June 10, 1994, Vickers, a maintenance worker at the Montlimar Building, left work around 4:00 p.m. He returned to the building around 10:30 p.m., following an electrical storm, to inspect the air conditioning system, which was located on the building’s roof. Vickers was accompanied by two friends, Tom and Wendy Sclater. Vickers testified that when he and the Sclaters entered the first-floor elevator, he *1108 saw a bght from the second floor elevator lobby shining down into the elevator shaft. Vickers decided to investigate, and the trio rode the elevator to the second floor, where, Vickers says, they found the hoist-way doors of the center elevator open, without a car present. Vickers stated that he walked to the opening, looked into the elevator shaft, and was struck in the head by the toe guard of a descending elevator car. Vickers fell to the floor of the elevator shaft, and suffered a laceration to his face and an injury to his knee.
On May 23, 1996, Vickers sued Dover; its employee English; and Mutual Assurance Company of Alabama. Vickers and Mutual Assurance entered into a pro tanto settlement, whereby Mutual Assurance was dismissed from the action. Thereafter, Dover and English filed a summary-judgment motion, along with a statement of what they said were uncontested facts. Vickers filed an opposition to the summary-judgment motion.
After the parties had submitted depositions, affidavits, documents, and briefs, the trial court entered a summary judgment for Dover and English. In its order, the trial court gave the following statement regarding the facts:
“8. The elevator installation at the Montlimar Building operates with two separate sets of doors. The first set of doors are those to the elevator car itself and those doors are constantly under electrical power. The elevator car doors respond to various signals in the elevator logic system which cause the doors to open or close. (Deposition of Plaintiffs expert Hampton at 77, 78.)
“9. The second set of doors, the hoistway doors, are those visible to one standing in the elevator lobby. (Hampton at 77.) They are separate and apart from the car doors and are not, at any time, under direct power through the electrical system of the elevator. (Hampton at 78.) Instead, the hoistway doors open under power only if the car is present and the car doors mechanically connect themselves to the hoistway doors causing them to open when the car doors open. (Hampton at 78.) The only other way to open the hoistway doors, other than abuse (i.e., forcing the door open), is to use a hoistway door key which Mr. Vickers, at all times pertinent herein, had access to as a maintenance man. (Hampton at 80-81.) (Vickers at 37.)
“10. If the elevator car is not present on the floor [on] which the hoistway doors are located, in this case the second floor of the Montlimar Building, the hoistway doors will not under any circumstances open by themselves. (Hampton at 78.) The doors can, however, be opened manually with a key, and, if opened, remain open only if they are blocked open in some form or fashion. (Hampton at 81-82.) The hoistway door is outfitted with a spirator (a spring mechanism) that will automatically cause the hoistway doors to close unless the doors are physically blocked open. (Hampton at 81-82.)
“11. There is no testimony from any source that the doors were physically blocked open on the day the accident occurred.
“12. There is no evidence from any source that the spirator which would have automatically closed one or both of the hoistway doors, was broken at the time of the accident. Instead, the evidence shows that the spirator was functioning properly immediately after the accident. (Deposition of Boyd Carter at 46.)
“13. The hoistway doors are outfitted with a safety interlock mechanism which, when closed, creates an electrical circuit which allows the car to move. (Hampton at 71, 72.) Essentially, the interlock, when closed, sends a message to the logic system that the elevator hoistway doors are closed and locked and, as a result, it is safe for the elevator to move. (Hampton at 71-72.)
*1109 “14. The Plaintiffs expert has testified that a person can by-pass the safety interlock system with a jumper wire applied to appropriate terminals in the machine room which is located at the top of the elevator shaft. (Hampton at 72.)
“15. There is no direct evidence of any kind from any source that the safety interlock system was jumped at the time the accident occurred. (Hampton at 75.) The Plaintiffs expert testified:
“1. Mr. Vickers and others have testified that the elevator ran with both hoistway doors open.
“2. The elevator, if working properly, should not run with both hoist-way doors open.
“3. The only way that the elevator can run, in the opinion of Mr. Hampton, with both doors open is for the safety interlock system to have been by-passed.
(Hampton at 71.)
“16. Mr. Hampton testified that he did not know of any evidence from any source of any kind that the safety interlock system was by-passed on the day of the accident. (Hampton at 75.) The Plaintiffs expert assumes that the interlock was by-passed solely because the Plaintiff testified the elevator ran with the doors open. (Hampton at 75.)
“17. Mr. Hampton testified further that even if the door was by-passed, he does not know who by-passed the interlock. (Hampton at 75.) There is absolutely no evidence that establishes that Dover Elevator or anyone acting on its behalf, jumped out the interlock.
“18. The Plaintiffs expert stated that the most probable way in which to by-pass the safety interlock system is with a jumper cable used in the machine room which is located at the top of the elevator shaft. Mr. Hampton admitted that Mr. Vickers had a key to the machine room. (Hampton at 85.) Mr. Vickers testified he had access to the machine room. (Vickers at 40.) In addition to the Plaintiff and a representa-five of Dover Elevator, the building manager also had a key to the top floor machine room. All persons with keys deny jumping out the interlock system.
“19. The Plaintiffs own testimony establishes that he had a familiarity with elevators. (Vickers at 36^12.) He had from time to time run the elevator involved in this accident from on top of the elevator car. (Vickers at 38.) He himself testified that he had been in the machine room and was familiar with that room. (Vickers at 40-41.)
“20. Dover Elevator and other representatives of Dover Elevator Company, including [Dover employee] English, denied that they at any time jumped the safety interlock system in the machine room or anywhere else to allow the elevator to move with both hoistway doors open. The Plaintiffs expert cannot think of a reason why someone, particularly a maintenance man, would intentionally by-pass the safety interlock system. (Hampton at 99.)
“21. The safety interlock, when inspected three days after the accident, was in proper working order and there was no evidence it shorted out or was otherwise not operational at the time of the accident. (Carter at 52.) (Hampton at 74.)
“22. Dover Elevator Company does not design, manufacture or sell elevator systems. Dover Elevator Company did not design, manufacture or sell the system installed at the Montlimar Building in Mobile. (Carter at 12,13.)”
Vickers contends that the trial court comm erroneously entered the summary judgment for Dover and English because, Vickers says, the evidence created a genuine issue of material fact and the defendants therefore were not entitled to a judgment as a matter of law.
Under Rule 56(c)(3), AluR.Civ. P., a summary judgment is appropriate if “there is no genuine issue as to any material fact and ... the moving party is enti- *1110 tied to a judgment as a matter of law.” See, e.g., Olympia Produce Co. v. Associates Fin. Servs. of Alabama, Inc., 584 So.2d 477 (Ala.1991). The burden is on the moving party to show that no material fact is in dispute. If the moving party makes a prima facie showing that no genuine issue of material fact exists, then the burden shifts to the nonmovant to present “substantial evidence” creating a genuine issue of material fact. § 12-21-12, Ala. Code 1975. See, e.g., Cobb v. Southeast Toyota Distribs., Inc., 569 So.2d 395 (Ala.1990). For evidence to be considered “substantial,” it must be of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). Our review of a summary judgment is de novo. Lipham v. General Motors Corp., 665 So.2d 190 (Ala.1995). On review of a summary judgment, this Court must view the evidence in a light most favorable to the nonmovant. Malmberg v. American Honda Motor Co., 644 So.2d 888 (Ala.1994).
Vickers contends that the record contains substantial evidence creating a jury question as to whether Dover, through its agent English, “jumped out” the safety interlock system and thereby caused Vickers’s accident. In support of his argument, Vickers asserts:
“1. Defendant Dover Elevator Company, through its employee Defendant English, was the only company that has ever repaired or maintained the elevators at the Montlimar Building. (C. 591-92.)
“2. Besides Defendant Dover and its employees, the only other people who have keys to the locked machine room where the interlock switch could be jumped out are the building manager, the Plaintiff and Tom Sclater. All deny having ever done any maintenance work in the machine room. (C. 107, 755-56.)
“3. Defendant English admits having used jumper wires previously, despite the fact that he was aware that it was not a good practice and could create potential hazards. (C. 314-15, 338.)
“4. The Plaintiff was injured when the elevator car ran with both doors open. The only way this can happen is if the interlock switch has jumped out. (C. 59A, 73, 146, 368-69, 950, 1133-34.)
“5. Defendant English had access to the building the weekend after the Plaintiff was injured on Friday night and, in fact, at least went to the building on Saturday, June [11], 1994. (C. 316— 17.)
“6. Defendant English maintains that he did not do anything other than view the questioned elevator at the bottom floor on Saturday. He found out the next day (June 12) in a telephone conversation with the building assistant manager, Jill Meeks, that the Plaintiff had been injured and that he had said the elevator had run with both doors open. Notwithstanding that fact, he maintains that he did not return to the Montlimar Building that day to see if there were safety hazards still present on areas above the first floor. (C. 319.)
“7. When Defendant English and the other Dover representatives inspected the elevator shaft on June 13, 1994, they determined that the interlock switches on all floors for the questioned elevator had been operating properly. No jumper wires were found in the machine room. Accordingly, because the elevator ran with both doors open, the jumper wires had to have been removed subsequent to the Plaintiffs injuries on June 10,1994 and prior to the inspection on June 13, 1994. (C. 353, 355-56, 359, 1131.)
“8. There is no evidence that any other individual inspected or repaired the elevators between the Plaintiffs injuries on June 10, 1994, and the inspection on June 13,1994.”
*1111 Tenants of the Montlimar Building testified the elevator would occasionally stop between floors. One tenant testified that she had seen the first-floor elevator doors open with no car present. Another tenant described a situation wherein the elevator began to move before the doors closed. The record does not indicate that Dover had been advised of these problems before the incident involving Vickers.
Vickers and Sclater testified that the elevator ran while the second-floor hoist-way doors were open. Vickers’s expert opined that the only way the elevator could have ran with both doors open would have been for the safety interlock system to be “bypassed.” Dover denied bypassing the safety interlock system; English acknowledged that he had used a jumper wire to bypass interlock systems in the past, but denied bypassing the interlock system at the Montlimar Building. Dover’s expert testified that “jumping out” the safety interlock would not cause the hoistway doors to open. He further stated that he did not believe Vickers’s account of how the accident occurred. Viewing the facts in a light most favorable to Vickers, we conclude that the evidence presented was sufficient to create a genuine issue of material fact as to whether the safety interlock system had been bypassed.
The summary judgment is reversed and the case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, COOK, LYONS, JOHNSTONE, and ENGLAND, JJ., concur.
HOUSTON, SEE, and BROWN, JJ., dissent.